# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-412-02 |
| | : | |
| v. | : | |
| | : | |
| BRIAN REYNOLDS | : | |

## MOTION IN OPPOSITION TO GOVERNMENT MOTION FOR DETENTION

Defendant Brian Reynolds was arrested at his home at 2617 S. 17th St. in Philadelphia on July 30, 2014. This arrest followed a multi-count indictment charging the defendant with RICO conspiracy, three counts of Hobbs Act robbery, three counts of use of a firearm during a crime of violence, Hobbs Act extortion and one count of falsification of records.

At defendant's first appearance the government moved for detention pursuant to 18 U.S.C. § 3412. Defendant submits this motion in opposition to such detention and for release on conditions satisfying the intent and requirements of 18 U.S.C. § 3412.

18 U.S.C. § 3142(e) indicates that pre-trial detention is only appropriate if there are no conditions that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

It is agreed that the charges in the indictment trigger a rebuttable presumption that no conditions will reasonably assure the appearance of the defendant and the safety of the community 18 U.S.C. § 3142 (f) (1) (A).

The government in its motion does not articulate any fact, other than the charges themselves that give use to any reasonable risk of flight or danger to the community. Under the theory of the government motion the mere fact that there is probable cause to indict and a

potential substantial sentence that should carry the day in detaining a citizen pre-trial, who is presumed innocent. This mind set indicates not a rebuttal presumption but in reality a mandatory presumption. The government has not put forward a single fact, other than the charges and penalty, that give any reasonable court belief that Mr. Reynolds would not show up for court or would be any risk to any human being on the planet. This risk of flight and/or danger to community must be a serious and real risk not a remote or imagined risk. Pre-trial detention on remote or imagined risk instead of real, serious risk is nothing more than primitive detention which is prohibited by Bail Reform Act of 1984 and the U.S. Constitution.

18 U.S.C. 3142(g) gives the various factors this court should consider when making a bail/detention decision.

**<u>Nature and Circumstances of Offense:</u>**

As previously agreed the nature of this offense is serious and the rebuttal presumption is triggered by the charges.

**<u>Weight of Evidence Against the Defendant:</u>**

The government in the motion makes the self-serving, simplistic conclusion that their evidence is "strong". They cite eleven separate victims and a cooperating witness to support their contentions.

It is the belief of counsel for Mr. Reynolds that the government possesses no physical evidence, forensic evidence, undercover evidence, or any audio or video tape recordings to verify corroborate and substantiate any of their allegations. This court should be well aware that this lack of independent corroboration of witnesses that have less than admirable backgrounds and have motive and bias against the defendant, can often be fatal to the government's case.

The eleven witnesses are all individuals who were or have been involved in criminal

activity and were arrested by the defendant and charged with further criminal activity. The charging and the arrest process has given each of these witnesses a real and substantial motive to fabricate and concoct stories against the defendant.

The cooperating witness the government refers to is a despicable former police officer caught red-handed in a sting operation. This cooperating witness has only one way out of serving an extraordinarily lengthy sentence - testify against others to obtain the government's favor and obtain the coveted 5K.1 motion. It is not unreasonable to conclude that this type of desperate, rotten individual may fabricate to save himself.

Experience and human nature tells us that those who see no way out, other than implicating others, may do so falsely.

It should be noted that the Philadelphia Police Department, Internal Affairs Division fully investigated these incidents and found them either unfounded or unsubstantiated for the government now to say these eleven cases are "strong" they must be taking the position that the Internal Affairs Division is either stupid, corrupt, or incompetent.

The government now takes these same eleven unfounded and unsubstantiated cases and with a wave of the wand from a drowning, despicable rat, turns garbage into gold. The government has an incredibly slanted view of a "strong" case. In fact, Police Commissioner Ramsey was fully aware of the internal affairs investigation and results and chose not to remove any of the defendants from the street and allowed them to continue working, carrying a gun and protecting the citizens of Philadelphia.

Counsel and his client have reviewed the incidents related in the indictment and even with a cursory analysis, without the benefit of discovery, know that the episodes related are false and contain facts that will be affirmatively shown to be outright lies. Also, in many of these

incidents multiple supervisors were present during the episodes.  Many of the episodes attribute conduct to people who the evidence will show were not even present or working at the time of the incident.   The government either didn't do their homework in connections with these episodes or proceeded with blinders on that prevented them from seeing reality.

**18.USC.3412(g)(a):  HISTORY AND CHARACTERISTICS OF BRIAN REYNOLDS**:

 1. Character of the defendant:  The defendants' character is impeccable.  Mr. Reynolds has never had any incident in his life that reflects poorly on his character.  Mr. Reynolds went to St. Mary's Catholic Grade School and graduated from Roman Catholic High School in 1989.  There is nothing in the background or history of Mr. Reynolds that indicates anything except exemplary character.  Mr. Reynolds in 21 years on the police force has never been subject to discipline.  He has received in excess of 20 commendations for his dedicated service as a police officer.  The last five have come from Commissioner Ramsey, who was privy to all the results of the Internal Affairs investigations less than one year ago Commissioner Ramsey gave Mr. Reynolds an award for "Honorable Service" for honorably serving as a dedicated and faithful servant to the people of Philadelphia.

 2. Physical and mental conduct:  There is absolutely no history of any physical, emotional or mental conditions.

 3. Family ties:  Mr. Reynolds was born in Philadelphia in 1971 and lived in the Schuylkill section with his mom and dad his entire childhood.  Mr. Reynolds has three sisters, Margaret, Cassy, and Mary Ellen (all live in Ridley Park) and one brother John who lives in Havertown.  Mr. Reynolds is married to Shannon Reynolds (since 1996) and they have three children, Chelsea and Brian (15) and Colin (10).  Mr. Reynolds and his family live in a modest South Philadelphia home with a $155K mortgage.

4. Employment: Mr. Reynolds has always been employed. After graduation from Roman Catholic High School Mr. Reynolds worked for the Stock Exchange and then Ed Giosa's Jewelers, until he entered the Police Academy in 1993 and has been employed with the police department for 21 years.

5. Financial resources: Mr. Reynolds hardly has the lifestyle of one who has engaged in theft of a substantial sum of money. As stated, he owns a modest home in South Philadelphia (2617 S. 17th Street) with a $155K mortgage and significant credit card debt. Mr. Reynolds owns two vehicles, a seven-year-old Yukon and an 11-year-old Impala.

6. Length of residence in the community: Mr. Reynolds has lived in Philadelphia either with his parents, by himself, or with his wife and three kids, for his entire life.

7. Community ties: Every tie that Mr. Reynolds has is to this community. Mr. Reynolds, wife and kids, live in Philadelphia, and his four siblings all reside in the Delaware Valley.

8. Past conduct: There is nothing negative in how Mr. Reynolds has conducted his life.

9. Drug/alcohol history: There is absolutely no evidence of any abuse or problem with drugs or alcohol.

10. Criminal history: Mr. Reynolds has never been arrested in his life.

11. Appearance record: Obviously since he has no criminal history there is no appearance history, except for appearing in court to testify against criminals and drug dealers.

There is not a single thing the government can point to, other than the potential penalty that even remotely indicates a risk of Mr. Reynolds not appearing in court. It is important to point out that Mr. Reynolds has been fully aware of the nature and seriousness of this investigation for a long period of time. Mr. Reynolds had retained present counsel back in 2013 and was clearly under the belief all that time that an indictment was forthcoming. In fact,

counsel had indicated to the government that if indicted, to merely inform us and Mr. Reynolds would surrender. This was done verbally and by letter. However, the government and FBI did not take us up on that offer and chose to make a dog-and-pony show with my client in front of his wife and children. If there was really a risk of flight, not just the fantasy risk of flight the government talks about, Mr. Reynolds had ample opportunity prior to an indictment that he knew was coming to do so.

The government can point to no serious danger to the community that would be posed by Mr. Reynolds' release. The government just shows a danger of recidivism in one or more of the crimes actually specified by the bail statute. U.S. v. Butler, 165 F.D.R., 68 (N.D. Ohio, 1996). U.S. v. Himler, 797 F.2d 156, 160 (3rd C.R., 1986).

As a result, the issue before this Court is, is there a real risk of future dangerousness, i.e., committing crimes specified in the indictment and the bail statute. First of all, there is nothing other than the present indictment, in Mr. Reynolds' 43 years that would suggest danger to his community. Second, the crimes he is charged with have a key component to make them possible -- employment as a Philadelphia police officer. This component has been removed by Mr. Reynolds' dismissal from the police department. Mr. Reynolds could not, even if so inclined, engage in the charged conduct at any time in the future. The danger of recidivism and future dangerousness is therefore nonexistent.

**In Conclusion:**

Based on the foregoing, it should be crystal clear that there is absolutely no risk of flight in connection with Mr. Reynolds. To seriously suggest that Mr. Reynolds might flee is simply not realistic, reasonable or likely. The government is simply unable to point to any unique fact in this case, other than penalty (which is present in every case), that makes flight a serious risk.

Also, based on the foregoing, the threat of future dangerousness and future recidivism is nonexistent. As such, it is requested that this Court deny the government's punitive pretrial detention motion and set conditions that are reasonable under all the circumstances to assure appearance and protect the community.

|  |  |
|---|---|
| Date: August 4, 2014 | Respectfully submitted,<br>/S/ Jack McMahon<br><br>Jack McMahon |

## CERTIFICATION OF SERVICE

  I, hereby certify that on this date a copy of the foregoing document, was served via ECF system and facsimile:

Anthony J. Wzorek, AUSA
Office of the United States Attorney
615 Chestnut Street Suite 1250
Philadelphia, PA 19106
(215) 861-8469
(215) 861-8618  (fax)


Dated: August 4, 2014      /s/ Jack McMahon
               Jack McMahon