IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 14-412-02 |
| BRIAN REYNOLDS | : | |

**GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR
REVOCATION OF THE MAGISTRATE JUDGE'S ORDER
RELEASING DEFENDANT BRIAN REYNOLDS,
AND TO DETAIN DEFENDANT BRIAN REYNOLDS PRETRIAL**

**I.     INTRODUCTION**

Defendant Brian Reynolds has been charged in an Indictment with RICO conspiracy, three counts of Hobbs Act robbery, three counts of use of a firearm during a crime of violence, Hobbs Act extortion, and falsification of records in a federal investigation.    The RICO conspiracy charged Reynolds and five co-conspirators with twenty-two separate acts involving Hobbs Act robbery, Hobbs Act extortion, state robbery, state kidnapping, and acts of physical violence, which occurred between 2006 and 2012 when Reynolds and his co-conspirators were members of the Philadelphia Police Department's Narcotics Field Unit.

On August 4, 2014, United States Magistrate Judge Timothy R. Rice denied the government's pretrial detention motion, and ordered defendant Brian Reynolds to be released on bail with home detention and electronic monitoring pending trial in this matter.   The government seeks a review of Magistrate Judge Rice's ruling that defendant Brian Reynolds be released on bail.

In this case, there is a statutory presumption under 18 U.S.C. § 3142(e) and (f)(1) that defendant Brian Reynolds is a risk of flight and a danger to the community.    Based upon the facts of this case, this presumption cannot be overcome.    Reynolds is charged with crimes

that he engaged in while a member of the Philadelphia Police Department. Instead of enforcing the law, he and his co-conspirators engaged in the systematic theft of over $500,000 of cash and personal items from drug-dealers and non-drug dealers alike through robbery, extortion, and physical violence over the course of seven years. He faces a maximum penalty of lifetime imprisonment including a mandatory minimum sentence of 52 years imprisonment. He is a significant flight risk and a danger to the community. For the reasons stated herein, the government respectfully requests that the Court grant the government's motion for pretrial detention.

## II.     PROCEDURAL BACKGROUND

In an indictment filed on July 29, 2014, defendant Reynolds and five other co-defendants, Thomas Liciardello, Michael Spicer, Perry Betts, Linwood Norman, and John Speiser, were charged with RICO conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to deprive of civil rights, in violation of 18 U.S.C. § 241; deprivation of civil rights, in violation of 18 U.S.C. § 242; Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (b)(2); Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a)(b)(2); carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); possession with intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. § 841; and falsification of records in a federal investigation, in violation of 18 U.S.C. § 1519. The civil rights conspiracy and substantive counts charged the use of excessive force during searches and seizures.

On July 30, 2014, defendant Reynolds had an initial appearance before Magistrate Judge Heffley. Jack McMahon entered his appearance on behalf of defendant Reynolds and Reynolds was ordered to be detained pending a detention hearing scheduled for August 4, 2014.

On August 4, 2014, Magistrate Judge Rice conducted a detention hearing. After hearing evidence by way of proffer, Magistrate Judge Rice released Reynolds on conditions of bail coupled with house arrest and electronic monitoring. The government respectfully submits that these conditions of release are insufficient to address the risk of flight posed by defendant Reynolds, and do not protect the community, including the community of witnesses in this case, from the defendant's continuing dangerousness. Defendant Reynolds cannot rebut the presumption of detention applicable to him under 18 U.S.C. § 3142(e).

### III. ARGUMENT

#### A. Standard of Review

This Court has jurisdiction to review a release order entered by a Magistrate Judge upon motion by the attorney for the government pursuant to Title 18, United States Code, Section 3145(a). Section 3145 requires the Court to make a *de novo* determination of the findings of fact underlying the release order. See United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985). The reasons set forth by the Magistrate Judge, however, must be given respectful consideration. United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must take into account the following: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves controlled substances or firearms; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). A rebuttable presumption against pretrial

release arises when a defendant, such as Reynolds, is charged with an offense under Section 924(c). See 18 U.S.C. § 3142(e)(3)(B). In such cases, the presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. Id. This presumption arises if there is probable cause to believe that the defendant actually committed the offense with which he is charged. See id.; see also Suppa, 799 F.2d at 118. The indictment in this case charges Reynolds with three counts of violations of 18 U.S.C. § 924(c), therefore, probable cause exists

"Once statutory presumptions [of risk of flight and danger to the community] are raised, the defendant carries burden of production to come forward with evidence to rebut the presumptions." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). It is the defendant, therefore, who shoulders the "burden of producing evidence showing that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). The government, however, must ultimately prove that the defendant is a danger to the community by clear and convincing evidence, or that the defendant poses a flight risk by a preponderance of the evidence. See United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986).

### B. Defendant Reynolds Should Be Detained Pretrial Because He Poses a Substantial Risk of Flight.

Defendant Reynolds should not be released on bail pending trial in this matter because he poses a significant risk of flight. Due to the strength of the case against him, the potential maximum sentence of lifetime imprisonment and a mandatory minimum sentence of 52 years imprisonment, Reynolds has a strong incentive to flee which cannot be tempered by any combination of release conditions. Accordingly, the government's pretrial detention order

should be granted.

### 1. The Government's Evidence Against Reynolds is Strong.

The evidence against Reynolds is strong. The government will be calling at least eleven separate victims and a cooperating witness against Reynolds at trial. The victims include drug-dealers and non-drug dealers alike. While the credibility of all these witnesses will be attacked at trial, the nature and the course of the investigation in this case will add to the credibility of the government's witnesses. Once the government obtained the cooperation of a cooperating witness, that witness went through the police arrest paperwork generated by the Narcotics Field Unit and identified searches, seizures, and arrests in which criminal activity by members of the Narcotics Field Unit had occurred. After obtaining this information, the FBI investigators identified and approached the victims of that police criminal activity and questioned them about the circumstances of their searches and arrests. The information obtained from the victims, years later, corroborated the information provided to them by the cooperating witness.

### 2. Reynolds Faces a Total Maximum Penalty of Lifetime Imprisonment and a Mandatory Minimum Term of 52 Years Imprisonment.

In addition to the strength of the evidence against Reynolds in this case, he also faces a significant term of imprisonment if convicted of these charges. The potential sentence facing Reynolds provides a strong incentive for him to flee the jurisdiction. This factor, therefore, weighs strongly against granting Reynolds request for bail. See, e.g., United States v. Miller, 2000 WL 633048, at *4 (E.D. Pa. May 9, 2000) (finding that "the serious potential" of a

mandatory minimum of 20 years imprisonment and a maximum of life imprisonment which the defendant faced upon conviction of a drug trafficking offense "provide[ed] a strong incentive to flee," and thus "strongly weigh[ed] against bail and pretrial release").

### C. Defendant Reynolds Should Be Detained Pretrial Because He Poses a Danger to the Community.

In addition to posing a significant risk of flight, Reynolds' conduct poses a continuing danger to the community. His actions, while a member of the Philadelphia Police Department, evidence a person who recognized no limits on his conduct. While in the company of other law enforcement officers, and while at least theoretically under the supervision of other law enforcement officials, Reynolds and his co-conspirators felt no inhibitions while engaging in numerous gunpoint robberies and beatings of arrestees. They violated legal requirements for court authorization for search warrants and divided stolen money among themselves. They then filed false police paperwork, neglecting to mention the physical force used or the money that they stole during the course of the search or arrest.

The indictment specifically charges that defendant Reynolds and his co-conspirators:

    a.    stole approximately $17,000 from R.K. at gunpoint during a car stop, then travelled to and searched R.K.'s apartment without a warrant, where they found and stole a safe containing approximately $80,000, broke into the safe, divided the money among themselves, and then disposed of the safe so that it would not be found.

    b.    stole over $16,000 and a Rolex watch from M.P. at gunpoint;

    c.    stole $2,000 in cash from T.C. at gunpoint after forcing T.C.

to provide the combination for his safe, which contained his daughter's college tuition money;

      d. stole $63,000 in cash from I.B. at gunpoint;

      e. stole approximately $11,000 from V.R. at gunpoint, then travelled to V.R.'s house, where they stole personal items including a Rolex watch. Defendant REYNOLDS was then observed wearing a similar Rolex watch by the victim and a law enforcement officer during one of V.R.'s court appearances, pointed to the watch, and mouthed the words "Thank You" to V.R.

      f. stole approximately $79,000 from J.K. at gunpoint, after one of the co-conspirators punched J.K. in the mouth, knocking out some of his lower teeth, and leaned him over a railing from approximately thirty feet off the ground;

      g. stole approximately $3,000 from C.C. at gunpoint;

      h. stole approximately $35,000 from M.L. after threatening M.L.'s mother with eviction if she did not give them permission to search her house;

      i. stole approximately $590 from L.S. at gunpoint;

      j. stole approximately $34,000 from W.L. at gunpoint after co-conspirators kicked W.L. in the mouth, breaking off a portion of his teeth, kicked him in the groin, and hit him in the back of the head with a steel bar;

      k. stole approximately $4,000 from T.A. at gunpoint, which was money she had received in federal government flood relief.

    This summary of the defendant's violations of the law while a police officer make it clear that he remains a continuing danger to the community, including the community of witnesses expected to testify at trial. His word that he will comply with any bail restrictions imposed by the

court is worthless in the face of his six years of violations of his oath to uphold the law as a police officer.

Accordingly, Magistrate Judge Rice's Order releasing defendant Reynolds on conditions of bail should be revoked and the government's motion for pretrial detention should be granted.

## IV.     CONCLUSION

When all of these factors are considered, together with the fact that a rebuttable presumption exists in this case, it is clear that no condition or combination of conditions will reasonably assure the presence of defendant as required and/or the safety of the community. Accordingly, the government respectfully requests that this Court grant the government's request for pretrial detention.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


s/Anthony J. Wzorek
ANTHONY J. WZOREK
Assistant United States Attorney

Date:   August 6, 2014

**CERTIFICATE OF SERVICE**

      I certify that a copy of the Government's Brief in Support of Motion for Revocation of Magistrate Judge's Order of Release was served on below defense counsel by filing on ECF:

      Jack McMahon, Esq.
      1500 Walnut Street
      Suite 1100
      Philadelphia, Pa19102

      s/Anthony J. Wzorek
      ANTHONY J. WZOREK
      Assistant United States Attorney

Date:   August 6, 2014